IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

PAUL JUNIOR SUTTON                                                                         PLAINTIFF

   v.                            Civil No. 06-4062

H.L. PHILLIPS, Sheriff, Miller County,
Arkansas; MIKE GRIFFIN, Warden; SGT.
GREEN; SGT. WRIGHT;
and NURSE TERRY PORTER                                                                 DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

  The Plaintiff, Paul Junior Sutton, (hereinafter "Sutton" or "Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2005), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

  Sutton is currently incarcerated in the Arkansas Department of Correction. The events at issue in this lawsuit occurred while he was incarcerated at the Miller County Correctional Center (MCCC). Sutton contends his constitutional rights were violated in the following ways while he was incarcerated there: (1) he was denied adequate medical care; and (2) he was denied access to an adequate grievance procedure.

  Defendants filed a summary judgment motion (Doc. 39). To assist Sutton in responding to the summary judgment motion, I propounded a questionnaire to Sutton (Doc. 42). Sutton filed a

-1-

timely response to the questionnaire (Doc. 43). The summary judgment motion is now ready for decision.

## 1. Background

Sutton was booked into the MCCC on April 3, 2006. *Plaintiff's Response* (Doc. 43)(hereinafter *Resp.*) at ¶ 1. He was being held on charges of robbery, possession of a controlled substance, and engaging in violent group activity. *Id.* at ¶ 2. The pending criminal charges were the only reason he was incarcerated. *Id.* at ¶ 3. He remained incarcerated at the MCCC until December 4, 2006, when he was transferred to the Arkansas Department of Correction (ADC).

On July 12th Sutton submitted a grievance stating he was receiving unfair treatment. *Resp.* at ¶ 5(A). He indicated he was having bad stomach problems and throwing up blood and all food. *Id.* He stated that the only thing done for his stomach problems was that on July 11th he was taken to a holding cell up front and left. *Id.* Then he indicates he was brought back to his cell. *Id.*

On July 12th Sutton also submitted a health services request form. *Resp.* at ¶ 5(B). He stated he had been throwing up blood and everything that he ate. *Id.* He said his stomach was hurting and he needed to see someone as soon as possible. *Id.* This was the first written request for medical treatment he submitted. *Id.* at ¶ 5(C).

Sutton was seen by Nurse Terry Porter that day. *Resp.* at ¶ 5(D). She noted that he complained he was throwing up bright red blood and could hold nothing down. *Id.* He also stated it hurt when he urinated. *Id.* Upon examination, she noted that Sutton had pain in the lower part of his stomach. *Id.* She ordered a complete blood cell count (CBC), started Sutton on Zantac, twice a day for thirty days, and indicated she would set him up an appointment with Dr. Stringfellow. *Id.* at ¶ 5(E).

Sutton was seen by Nurse Porter again on July 13th. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) C at ¶ 1. She noted that he was complaining of vomiting. *Id.* She noted he had a knot on his left side down towards the groin area that was sore to the touch. *Id.* She noted his urinalysis was within normal limits. *Id.* His temperature was also normal. *Id.* She placed Sutton on doctor's call for the knot on his left side. *Id.* She gave Sutton Tylenol three times a day for three days. *Id.*

Sutton, however, states he never had a knot on his left side. *Resp.* at ¶ 6. He indicates the knot has always been on his right side and that is where his scar is visible. *Id.*

On July 14th Sutton was taken to the emergency room of Wadley Regional Medical Center. *Resp.* at ¶ 7(A). He was examined due to complaints of abdominal pain and vomiting. *Id.* at ¶ 7(B). It was determined Sutton had an urinary tract infection and an inguinal hernia. *Id.* at ¶ 7(C). Sutton was given a prescription for Bactrim and Tylenol and told to follow-up with his primary care physician in three to five days. *Id.* at ¶ 7(D).

Sutton was seen by Dr. Stringfellow on July 16th. *Resp.* at ¶ 8(A). Dr. Stringfellow is a physician and serves the MCCC on a part-time basis. *Defts' Ex.* D at ¶ 1. Dr. Stringfellow prescribed Sutton 50 mg. of Tramadol for pain related to his inguinal hernia. *Resp.* at ¶ 8(C).

When Dr. Stringfellow examined Sutton on July 16th, he did not feel the hernia although he believes it is possible Sutton had a hernia. *Defts' Ex.* D at ¶ 7. According to Dr. Stringfellow, an inguinal hernia is not an urgent matter unless it becomes strangulated. *Id.* Dr. Stringfellow indicates he explained to Sutton that the hernia did not require immediate surgery although it was likely surgery to repair the hernia would be needed at some point in the future. *Id.*

Sutton agrees Dr. Stringfellow made the statement that he did not require surgery on his hernia while he was incarcerated at the MCCC. *Resp.* at ¶ 21. However, Sutton states Dr.

Stringfellow knew he would get shipped to the ADC before the County paid for it. *Id. See also* ¶ 8(F).

On July 17th Sutton submitted a grievance complaining that he was placed on lock-down at the nurse's station. *Resp.* at ¶ 9(A). He indicated he was stripped of all his rights. *Id.* He stated Nurse Terry didn't even know he was being placed there. *Id.* He asked when he would be able to be housed back in general population. *Id.*

On the bottom of the response form submitted as an exhibit, a response is written by Sgt. Wright and dated July 17th. *Defts' Ex.* B at page 3. In response, Sgt. Wright stated Sutton was moved there because the warden wanted him to be close to the nurse. *Id.* However, Sutton was told his visits were not taken away. *Id.* He was also told he could make phone calls at night. *Id.*

According to Sutton, Sgt. Wright never sent responses back to his grievances. *Resp.* at ¶ 9(B). It was not until this lawsuit was filed that he got a response. *Id.* Sutton states he was told later by the nurse that he was placed there because he was too much of a problem in the County Jail. *Id.*

Sutton was seen again on July 23rd by Dr. Stringfellow. *Resp.* at ¶ 10(A). Sutton's urinary tract infection had improved. *Id.* However, he had developed a rash. *Id.* Dr. Stringfellow suggested an appointment with Dr. Wyrick. *Id.* Sutton was seen by Dr. Wyrick. *Id.*

Sutton received no further treatment for the hernia while incarcerated at the MCCC. *Resp.* at ¶ 11. Since he has been transferred to the ADC, he has been placed on "72 status" because of the hernia and been put on pain pills. *Id.* at ¶ 12. Sutton does not explain what "72 status" is.

Sutton did not speak to, or communicate with, Sheriff Phillips about his need for medical treatment while he was at the MCCC. *Resp.* at ¶ 13. Sutton contends Sheriff Phillips violated his rights by allowing him to sit in jail without adequate medical care. *Id.* Under the policy of the

MCCC, Sutton contends he should have been taken to the hospital on July 11th when he was having severe pain. *Id.* With respect to Sgt. Green, Sutton contends he let Sutton sit in his cell on July 11th in pain and didn't follow the policy by calling emergency responders like he was supposed to. *Resp.* at ¶ 18.

With respect to Sgt. Wright, Sutton contends she didn't respond to his grievances and that violated due process. *Resp.* at ¶ 14. Furthermore, he contends she lied on the response to his grievance about his phone calls and visits. *Id.* He maintains he did not get to use the phone or see his family when he was locked in the nurse's station. *Id.*

With respect to Mike Griffin, Sutton contends he made the decision for Sutton not to have surgery and for him not to be taken to the hospital on July 11th. *Resp.* at ¶ 15. Sutton supports this assertion with no factual explanation. Sutton also contends Griffin oversees everything in the jail. *Id.*

With respect to Nurse Terry Porter, Sutton contends she states in her records that he was treated for left stomach pains and a knot on his left side. *Resp.* at ¶ 16. Sutton states he has never had a knot or scar on the left side of his body. *Id.* Sutton agrees that Nurse Porter did not make the decision whether he should have surgery on his hernia. *Id.* at ¶ 20.

## 2. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient

showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

Defendants have now moved for summary judgment. First, Defendants contend there is absolutely no evidence of deliberate indifference on the part of any of the Defendants to the serious medical needs of Sutton. In fact, they argue H.L. Phillips, Mike Griffin, Sgt. Green, and Sgt. Wright played no role in determining what type of medical treatment should be given to Sutton. Second, Defendants maintain there is no evidence of a custom of policy of Miller County that resulted in Sutton being denied adequate medical care. Third, Defendants contend they engaged in no conduct that violated Sutton's constitutional rights.

#### A. *Denial of Adequate Medical Care*

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs

violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007). In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for claims that detention center officials have denied inmates adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). This standard applies to all inmates, whether in pretrial or convicted status. *See id.*

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical

evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In this case, Sutton first requested medical treatment in writing on July 12th. *Resp.* at ¶ 5(A). Although he apparently requested medical treatment verbally on July 11th. *See e.g., Resp.* at ¶ 15. He was treated by Nurse Porter on July 12th. *Resp.* at ¶ 5(D). Blood tests were done, he was started on medication and an appointment scheduled for Sutton to see the doctor. *Id.* at ¶ 5(E). Sutton was seen by Nurse Porter again on July 13th. *Id.* at ¶ 6. He was taken to the emergency room on July 14th, diagnosed with a urinary tract infection and an inguinal hernia, prescribed medication, and told to follow up with his primary care physician in three to five days. *Id.* at ¶¶ 7(A)-(D).

Sutton was seen by Dr. Stringfellow on July 16th. *Resp.* at ¶ 8. Sutton was prescribed pain medication for the hernia. *Id.* at ¶ 8(C). Dr. Stringfellow did not order surgery on the hernia. *Id.* at ¶ 8(F) & ¶ 21.

Sutton was seen by Dr. Stringfellow again on July 23rd and referred to Dr. Wyrick because Sutton had developed a rash. *Resp.* at ¶ 10(A). Sutton was seen by Dr. Wyrick. *Id.* at ¶ 10(B).

With respect to Nurse Porter, Sutton contends she is mistaken when she noted in the records he was being treated for left stomach pains and a knot of his left side. *Resp.* at ¶ 16. He concedes she did not make the decision whether he should have surgery on the hernia. *Resp.* at ¶ 20. He makes no argument she erred in ordering the complete blood cell count, starting him on Zantac, or setting the appointment up for him to see Dr. Stringfellow. The only evidence of deliberate indifference he points to is her chart notations referring to his left sided stomach pains and the knot on his left side. *Id.* An error of this sort falls far short of establishing deliberate indifference to Sutton's medical condition by Nurse Porter. "For a claim of deliberate indifference, the prisoner must show more than negligence, more even that gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, ___ F.3d ___, 2008 WL 90056, * 9 (8th Jan. 10, 2008)(internal quotation marks and citations omitted).

With respect to Sheriff Phillips, Mike Griffin, Sgt. Green, and Sgt. Wright, there is no evidence they were personally involved making any decisions regarding Sutton's medical care. Instead, the decisions regarding Sutton's medical care were made by the medical staff and treatment decisions were made by medical personnel. *See Monell v. New York City Dep't of Soc. Servs.,* 436

U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)(respondeat superior liability not permissible under § 1983); *Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility). There is simply no basis on which the other named Defendants can be held liable. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th Cir. 1999).

Having found no individual liability exists on the part of any of the Defendants, there is no basis on which Miller County can be held liable. *McCoy v. City of Monticello*, 411 F.3d 920, 922 ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."). There is, in any event, no evidence of a custom or policy of Miller County which was the moving force behind any alleged constitutional violation. *See e.g., Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)(Plaintiff must identify a government policy or custom that caused the plaintiff's injury to recover from a government entity under § 1983).

Furthermore, with respect to any alleged delay in Sutton receiving surgery for his hernia, even if the decision could be said to be attributable to one or more of the named Defendants, Sutton has presented no evidence suggesting any delay in his obtaining treatment had a detrimental effect. "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment. To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment . . ." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)(internal quotation marks and citations

omitted). I note that since he has been at the ADC although he has received pain medication and been put on "72 status" Sutton does not allege he has undergone surgery or that any other medical treatment has been deemed necessary for the hernia. He therefore failed to raise a genuine issue of fact with respect to his claim of denial of adequate medical care.

### B. *Denial of Access to an Adequate Grievance Procedure*

Sutton contends he did not get responses to his grievances. However, he has not identified a federal constitutional right that he was deprived of because of the alleged inadequacies in the grievance procedures. He does not maintain he was treated differently from other similarly situated prisoners, or that his grievances were ignored because of his exercise of his First Amendment rights, or that his ability to exercise any specific constitutional right was chilled by Defendants' actions.

"Inmates do not have a constitutionally protected right to a grievance procedure. Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . . grievance procedure is not actionable under § 1983." *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000)(citations omitted). *See also Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)(inmates have no constitutional right to grievance procedure); *Blagman v. White*, 112 F. Supp. 2d 534 (E.D. Va. 2000)(inmate has no constitutional entitlement to grievance procedure), *aff'd*, 3 Fed. Appx. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." *Blagman*, 112 F. Supp. 2d at 542 (*citing Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." *Blagman*, 112 F. Supp. 2d at 542 (*citing, Scott v. Kelly*, 107 F. Supp. 2d 706 (E.D. Va. 2000), *aff'd*, 6 Fed. Appx. 187

(4th Cir. 2001)). "[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005).

### 4. Conclusion

For the reasons stated, I recommend that the Defendants' motion for summary judgment (Doc. 39) be granted.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this 13th **day of February 2008.**

          /s/ Barry A. Bryant
          HON. BARRY A. BRYANT
          UNITED STATES MAGISTRATE JUDGE